1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11    GERALD ASHFORD,                      Case No.  5:22-cv-00846-SSS-KES

12                         Plaintiff,

13         v.                              REPORT AND RECOMMENDATION
                                               OF UNITED STATES
14    JAMES HILL, et al.,                       MAGISTRATE JUDGE

15                         Defendants.

16

17

18         This Report and Recommendation ("R&R") is submitted to the Honorable

19   Sunshine Suzanne Sykes, United States District Judge, pursuant to the provisions

20   of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for

21   the Central District of California.

22                                    **I.**

23                             **INTRODUCTION**

24         Pro se inmate Gerald Ashford ("Plaintiff") is pursuing this civil rights

25   litigation against staff at California Institution for Men ("CIM").  Plaintiff filed the

26   operative Second Amended Complaint ("SAC") in April 2023.  (Dkt. 32.)

27

28

Plaintiff's claims arise out of three sets of facts:

1. <u>Walkway Claims</u>:  Plaintiff alleges that on February 23, 2021, he tripped and fell over an "uneven and unsafe walkway at CIM A-Facilities Laguna Hall (aka A-7)" in the Laguna Hall "mini-yard." (Dkt. 32 at 14; Dkt. 32-2 at 22.[1])  He contends that the walkway posed a tripping hazard because he is "severely visually impaired." (Dkt. 32 at 14.)  He suffered two broken fingers.  (<u>Id.</u>)

2. <u>Grievance Mishandling Claims</u>:  Plaintiff alleges that when he filed a grievance about his fall and other issues, it was mishandled.  (<u>Id.</u> at 4.)

3. <u>Heat and Water Quality Claims</u>:  Plaintiff alleges that CIM has no air-conditioning, such that he and other inmates have experienced prolonged exposure to high interior temperatures.  (<u>Id.</u> at 12.)  The health risks caused by the excessive heat cannot be mitigated by drinking because CIM's drinking water is "contaminated."  (<u>Id.</u> at 14.)

Based on these facts, Plaintiff alleges federal claims under (1) 42 U.S.C. § 1983 for violations of his rights under the Eighth Amendment (inhumane conditions of confinement), Fourteenth Amendment (Due Process and Equal Protection), and First Amendment (right to petition without retaliation); (2) Title II of the Americans with Disabilities Act ("ADA") at 42 U.S.C. § 12132; and (3) Section 504 of the Rehabilitation Act of 1973 at 29 U.S.C. § 794.  (<u>Id.</u> at 24, 29.)  Plaintiff also alleges state law claims under the (1) Bane Act at California Civil Code § 52.1 and (2) Elder Abuse Act at California Welfare and Institutions Code § 15600 <u>et seq.</u>  (<u>Id.</u> at 24, 29.)

---

[1] Page citations are to the pagination imposed by the Court's e-filing system.

2

Plaintiff sues six Defendants in their individual and official capacities:

|  | Name | Title at CIM | Cite |
|---|---|---|---|
| 1 | Larry Cain | Correctional Plant Manager | SAC ¶ 5 |
| 2 | Larry Kazandjian | Co-Correctional Plant Manager | SAC ¶ 6 |
| 3 | B. Castorena | A-Facility ADA Coordinator | SAC ¶ 7 |
| 4 | C. Muratet | Armstrong[2] Remedial Plan Coordinator | SAC ¶ 8 |
| 5 | T. Nesbitt | Health Care Compliance Analyst | SAC ¶ 9 |
| 6 | T. Kerr | Grievance Coordinator | SAC ¶ 10 |

Plaintiff seeks compensatory and punitive damages from all Defendants. (Dkt. 32 at 31.)  He also seeks retrospective declaratory relief in the form of a declaration that Defendants' past conduct violated the laws under which he brings suit.  (Id. at 30-31.)  While Plaintiff labels his fifth cause of action "Declaratory and Injunctive Relief," he does not set forth any request for injunctive relief.  (Id.)

For the reasons discussed below, the undersigned Magistrate Judge recommends that (1) all Plaintiff's Walkway Claims and Grievance Handling Claims be dismissed without further leave to amend and (2) Plaintiff's Heat and Water Quality Claims be dismissed with limited leave to amend to attempt to plead a claim for prospective injunctive relief against the California Department of Corrections and Rehabilitation ("CDCR").

## II.

## LEGAL STANDARDS

Under the Prison Litigation Reform Act ("PLRA"), before ordering service, the Court must review complaints filed by prisoners against government officials to determine whether the action is frivolous or malicious, fails to state a claim on

---

[2] See Armstrong v. Brown, 768 F.3d 975 (9th Cir. 2014) (class action requiring California to develop and follow a remedial plan to provide certain accommodations to disabled inmates).  Class counsel include attorneys from the Prison Law Office.  Id.

which relief might be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2), 1915A.  A complaint fails to state a claim on which relief might be granted where it lacks a cognizable legal theory or lacks sufficient factual allegations to establish every element of the claim.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

### III.

### DISCUSSION: WALKWAY CLAIMS

**A. Section 1983: Eighth Amendment/Inhumane Conditions.**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must "plead that (1) defendants acting under color of state law (2) deprived plaintiff of rights secured by the federal Constitution or federal statutes."  Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986).

**1.  Official Capacity Claims.**

Section 1983 claims against government employees in their "official capacity" are treated as claims against the government employer.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citation omitted).  Plaintiff alleges that all Defendants are employed by CIM, a state prison run by CDCR.  (Dkt. 32 at 13.)  Plaintiff's official capacity claims, therefore, are against CDCR.

The Eleventh Amendment to the United States Constitution sets out the principle of State sovereign immunity, providing as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  In other words, "The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state."  Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991); Kentucky, 473 U.S. at 169 ("[A]bsent a waiver by the state or a valid congressional

4

override, the Eleventh Amendment bars a damages action against a state in federal court.").  In addition to barring claims for monetary damages, the Eleventh Amendment also bars retrospective declaratory relief against the state.  <u>Lund v. Cowan</u>, 5 F.4th 964, 969 (9th Cir. 2021).  The Eleventh Amendment applies to state agencies like CDCR.  <u>Lucas v. Dep't. of Corr.</u>, 66 F.3d 245, 248 (9th Cir. 1995) (holding that claims against CDCR were barred by Eleventh Amendment immunity).

Plaintiff's only walkway-related § 1983 claims are for monetary damages and retrospective declaratory relief.[3]  Thus, Eleventh Amendment immunity bars all Plaintiff's § 1983 official capacity Walkway Claims.

**2.  Elements.**

The Eighth Amendment to the Constitution prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  "[T]he Eighth Amendment applies to conditions of confinement that are not formally imposed as a sentence for a crime."  <u>Helling v. McKinney</u>, 509 U.S. 25, 29 (1993).  The Supreme Court has recognized that the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is reasonable safety," and "[i]t is "cruel and unusual punishment to hold convicted criminals in unsafe conditions."  <u>Id.</u> at 33 (citations omitted).  Such Eighth Amendment claims are analyzed through a two-pronged inquiry.  <u>Id.</u> at 35-37.

Under the first objective prong, the prisoner must allege facts establishing

---

[3] In his First Amended Complaint, Plaintiff sought injunctive relief on his Walkway Claims.  The Court dismissed his claim for injunctive relief with leave to amend for failure to allege facts showing standing.  (Dkt. 23 at 9.)  Plaintiff alleged that he was transferred out of Facility-A where the uneven walkway is located.  Plaintiff chose not to include a walkway-related claim for injunctive relief in the SAC, presumably because he cannot allege facts establishing standing.

that:

> society considers the risk that the prisoner complains of to be so grave
> that it violates contemporary standards of decency to expose anyone
> unwillingly to such a risk.  In other words, the prisoner must show that
> the risk of which he complains is not one that today's society chooses
> to tolerate.

Id. at 36 (holding prisoner whose cellmate smoked five packs of cigarettes a day could potentially state an Eighth Amendment claim based on involuntary, unreasonably high exposure to environmental tobacco smoke).  "Not every deviation from ideally safe conditions amounts to a constitutional violation." Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985).

The second subjective prong "requires an inquiry into the prison officials' state of mind" based on the "deliberate indifference" standard.  Helling, 509 U.S. at 32.  A prison official is deliberately indifferent if he actually "knows of and disregards an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  This subjective prong focuses "on what a defendant's mental attitude actually was."  Id. at 839.  It asks whether a defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 842.  Ultimately, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at 847.

### 3.  The Objective Prong.

#### a.  Factual Allegations.

On initial screening, the Court advised Plaintiff that he had not alleged facts showing the walkway posed an intolerable risk.  (Dkt. 17 at 3.)  The Court suggested that Plaintiff could add facts to answer questions such as "How long had Plaintiff been at CIM?  How often had he walked on that walkway without

incident?  Was it unusual compared to other walkways at CIM?"  (Id.)

In the SAC, Plaintiff alleges that the walkway where he tripped was uneven, broken, and had a "hole."  (Dkt. 32 at 14, 21.)  He describes a "two foot by eight inch" piece of walkway as "broken, missing."  (Id. at 27.)  In his grievance, he says the walkway was made of asphalt.  (Dkt. 32-2 at 22.)  Plaintiff alleges that two other inmates tripped on this same hole.  He attaches a declaration from Frank Rust who says he tripped in December 2019 but did not report his minor injuries.  (Dkt. 32-3 at 26.)  Mr. Rust tripped despite having "good" eyesight when he wears glasses.  (Id. at 27.)  Benard Englemen tripped on the same hole in June 2021 and November 2022, i.e., after Plaintiff's fall in February 2021.  (Id. at 28.)

Plaintiff alleges that the walkway was in disrepair at least since an October 2019 inspection.  (Id. at 13.)  This inspection is documented in a January 7, 2020 letter from the Prison Law Office to CDCR describing "physical plant problems" at CIM.  (Dkt. 32-1 at 5 (the "Inspection Letter").)  The Inspection Letter is based on "walking tours during the March and October 2019 Armstrong monitoring tours at CIM."  (Id.)  The Inspection Letter has a section devoted to A-Yard observations.  As to A-Yard walkways, the Inspection Letter recounts that there were plans in 2017 to install a concrete walkway in the visiting courtyard, but none had yet been built.  (Id. at 7.)  Regarding "path of travel" problems, the Inspection Letter describes "a ditch and a curb near the sidewalk next to the library on A-yard."  (Id. at 8.)  The Inspection Letter does not mention a "hole" in any A-yard walkways or asphalt surfaces.  The Inspection Letter does not mention the Laguna Hall mini-yard or A-7.[4]

_____

[4] In contrast, the Inspection Letter discusses cracked and uneven walkways in D-Yard.  (Dkt. 32-1 at 15 (discussing photographs taken of "several significant cracks or uneven pavement throughout D Facility")).  Plaintiff says that the defects in A-Yard are described on page 19.  (Id. at 3 ¶ 1.)  But page 19 only discusses "recurrent problems with the showers and toilets" at Facility A.  (Id. at 23.)

**b. Pleading Deficits.**

Numerous district courts in the Ninth Circuit have concluded that uneven or broken walking surfaces in prisons generally do not rise to the level of an inhumane condition of confinement.[5]  For example, in <u>Clark v. Gutierrez, et al.</u>, No. 1:21-cv-01386, Dkt. 15, 2022 U.S. Dist. LEXIS 99624, 2022 WL 1913772 (E.D. Cal. June 2, 2022).  Plaintiff inmate alleged that he tripped over an "abnormal arch in the blacktop pavement" where other inmates had previously fallen. <u>Id.</u>, No. 1:21-cv-01386 (Dkt. 15 at 4), 2022 U.S. Dist. LEXIS 99624, at *5, 2022 WL 1913772, at *2.  He failed to allege facts showing that prison staff knew the condition posed an excessive risk to inmate health because no allegations suggested the previous falls resulted in injury "let alone serious injury." <u>Id.</u>, No. 1:21-cv-01386 (Dkt. 15 at 10), 2022 U.S. Dist. LEXIS 99624, at *16, 2022 WL 1913772, at *6.

In <u>Kevin Lee Brown v. Perez, et al.</u>, No. 5:14-cv-02421-CJC-JEM, Dkt. 49, 2016 U.S. Dist. LEXIS 182734 (C.D. Cal. Dec. 16, 2016), Plaintiff, a CIM inmate, alleged "he was injured when he stepped in a hole while playing basketball" on B-Yard and ruptured a tendon in his knee. <u>Id.</u>, No. 5:14-cv-02421-CJC-JEM (Dkt. 49 at 2), 2016 U.S. Dist. LEXIS 182734 at *3.  Earlier, he had filed grievances about CIM's "cracked and broken paved walkways and basketball courts on the A-West Yard and the C-East Yard," as well as "the asphalt on the track at Facility A." <u>Id.</u>,

---

[5] District courts outside the Ninth Circuit have taken the same approach. <u>See</u>, <u>e.g.</u>, <u>Bolds v. Blackwood</u>, No. 4:13-cv-00420, 2013 U.S. Dist. LEXIS 182209, at *5 (N.D. Fla. Oct. 21, 2013) ("Plaintiff does not have a constitutional right that requires prison officials to repair cracked sidewalks."); <u>Sherman, et al. v. Lane, et al.</u>, No. 1:92-cv-02192, 1998 U.S. Dist. LEXIS 2710, at *16, 1998 WL 111649, at *6 (N.D. Ill. Mar. 6, 1998) ("Although in an ideal world, sidewalks would be flawlessly paved with no cracks to stumble on, Rutledge has not averred any deliberate indifference on the part of prison officials to his welfare.  At most, he has described some negligence ….").

8

No. 5:14-cv-02421-CJC-JEM (Dkt. 49 at 4), 2016 U.S. Dist. LEXIS 182734 at *6.
The Court found Plaintiff failed to state a claim because he failed to allege "some
additional condition exacerbating that threat" posed by the broken pavement.  Id.,
No. 5:14-cv-02421-CJC-JEM (Dkt. 49 at 14), 2016 U.S. Dist. LEXIS 182734 at
*20.  The Court distinguished Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998)
("[s]lippery floors without protective measures could create a sufficient danger to
warrant relief" when inmate on crutches repeatedly fell in shower without
handicapped accommodations) and Morgan v. Morgensen, 465 F.3d 1041, 1044
(9th Cir. 2006) (inmate forced to work with defective, dangerous printing
equipment could state an Eighth Amendment Claim).

A few years earlier in Levy v. Department of Corrections of Washington, et
al., No. 3:12-cv-05236, Dkt. 31, 2013 U.S. Dist. LEXIS 62508, 2013 WL 1855857
(W.D. Wash. Mar. 15, 2013), the district court held that an inmate who tripped and
fell over a sprinkler head hole in the recreation yard did not allege facts satisfying
the objective prong of an Eighth Amendment Claim because he did not describe a
condition that rose "to an extreme deprivation or denial of life's minimum
necessities."  Id., No. 3:12-cv-05236 (Dkt. 31 at 16), 2013 U.S. Dist. LEXIS
62508, at *24, 2013 WL 1855857, at *9.

In Wallace v. Hawthrone, et al., No. 2:06-cv-01697, Dkt. 27, 2007 U.S. Dist.
LEXIS 76330, 2007 WL 3010755 (E.D. Cal. Oct. 15, 2007), the plaintiff inmate
tripped over holes caused by missing tiles.  The condition of the flooring did not
constitute an excessive risk of serious harm.  Id., No. 2:06-cv-01697 (Dkt. 27 at 6),
2007 U.S. Dist. LEXIS 76330, at *9, 2007 WL 3010755, at *4, adopted by 2007
U.S. Dist. LEXIS 90936, 2007 WL 4358230 (E.D. Cal. Dec. 11, 2007), aff'd, 328
F. App'x 467 (9th Cir. 2009).

Here, Plaintiff alleges that he is "severely visually impaired" as a "glaucoma
and cataract patient."  (Dkt. 32 at 14, 27.)  He does not allege, however, that he
uses a white cane to ambulate or generally cannot see well enough to walk outside

on naturally uneven surfaces.  Plaintiff's allegations about his visual impairment are not enough to transform his claim of poor sidewalk maintenance into a cruel and unusual punishment claim.  First, unlike in <u>Frost</u>, Plaintiff could have tripped even without his disability.  As demonstrated by the Rust and Englemen declarations, even inmates with "good" or "ok" eyesight tripped on this hole.  (Dkt. 32-3 at 27, 29.)  Moreover, Plaintiff's visual impairment did not make him more likely to be seriously injured if he tripped.  Even Defendants who knew about the hole could have reasonably believed that if an inmate tripped, he would only suffer minor bruises or abrasions, like Mr. Rust.  (<u>Id.</u> at 26.)  Second, unlike in <u>Morgan</u>, Plaintiff does not allege that Defendants compelled him to use this walkway.  Despite multiple opportunities to amend, Plaintiff has not alleged facts showing that the walkway posed an unreasonable risk of serious harm.

### 4. The Subjective Prong.

Having determined above that Plaintiff has not alleged facts showing that the walkway posed an intolerable risk, it follows that Plaintiff has not alleged facts showing that Defendants knew it posed such a risk.  But even considering the subjective prong separately, Plaintiff's allegations fail to state an Eighth Amendment claim.

As to Defendants Nesbitt and Kerr, the SAC contain no factual allegations linking them to the broken walkway.  As to the other Defendants, the facts on which Plaintiff relies to show that they knew about the broken walkway before his fall do not actually show that, let alone that Defendants knew the walkway posed an intolerable risk.  First, the Rust and Englemen declarations do not show that anyone at CIM knew about the hole before Plaintiff's fall.  While Mr. Rust fell before Plaintiff, he did not report his fall.  (<u>Id.</u>)  Mr. Englemen fell after Plaintiff.  (<u>Id.</u> at 28.)  Second, even if some Defendants received the Inspection Letter, it says nothing about any asphalt walkway holes in A-Yard.  Third, if Plaintiff relies on Defendants' participation in the inspection, the Inspection Letter does not say who

participated other than Defendant Larry Cain.  (Dkt. 32-1 at 24.)  Even as to Defendant Cain, it is illogical to think that participating in the inspection would have caused him to realize there was an intolerably risky walkway hole in A-Yard when the Inspection Letter does not mention it.

**B. Title II ADA Claims.**

**1. Elements.**

Title II of the ADA provides as follows:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefit of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  This provision of the ADA extends to disability-based discrimination against inmates in state prison.  Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).

The Ninth Circuit has set forth the elements of a Title II claim, as follows:

To prove that a public program or service violated Title II of the ADA, a plaintiff must show that: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).  To recover monetary damages, Plaintiff must also show "intentional discrimination on the part of the defendant."  Id., 260 F.3d at 1138.

**2. Individual Capacity Claims.**

Individuals in their individual capacities are not proper defendants of an

ADA Title II lawsuit.  Kaur v. City of Lodi, 263 F. Supp. 3d 947, 981 (E.D. Cal 2017); Becker v. Oregon, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001).

### 3. Official Capacity Claims.

State entities like CDCR enjoy Eleventh Amendment immunity from ADA Title II lawsuits for monetary damages and retrospective declaratory relief unless the alleged wrongdoing is also a constitutional violation.  U.S. v. Georgia, 546 U.S. 151, 158-59 (2006) (discussing Congress's intent to abrogate state sovereign immunity for certain ADA claims).

Plaintiff's walkway-related ADA claims do not involve conduct that violates the U.S. Constitution.  As discussed above, Plaintiff has not alleged facts showing a violation of the Eighth Amendment.  He also fails to allege facts showing a violation of the Fourteenth Amendment's Equal Protection Clause.  While disabled people do not constitute a suspect class, "the Equal Protection Clause prohibits irrational and invidious discrimination against them."  Kohn v. State Bar of Cal., 497 F. Supp. 3d 526, 537 (N.D. Cal. 2020).  In deciding how to maintain the A-Yard walkways, CDCR did not engage in "irrational and invidious discrimination" against disabled inmates.  The walkway was available in the same imperfect condition for use by all A-Yard inmates.  Even inmates with "good" eyesight tripped on this walkway.  (Dkt. 32-3 at 27.)  Indeed, the walkway hole was so large at 2 feet by 8 inches that even an inmate with impaired vision (but not legally blind) who was paying attention could have seen and avoided it.

## C. Rehabilitation Act Claims.

### 1. Elements.

Section 504 of the Rehabilitation Act provides for liability as follows:

No otherwise qualified individual with a disability in the United States [defined elsewhere] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

Just like the ADA, recovery of monetary damages requires intentional discrimination. <u>Duvall</u>, 260 F.3d at 1138. The appropriate test for establishing intentional discrimination under the Rehabilitation Act is the deliberate indifference test. <u>Id.</u> at 1139. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." <u>Id.</u> at 1139. When a plaintiff has alerted the public entity to his need for an accommodation, the public entity is on notice, and plaintiff has satisfied the first element of the deliberate indifference test. <u>Id.</u> For the second factor, the public entity is required to "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." <u>Id.</u> To satisfy the second element, "a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." <u>Id.</u>

In the prison context, a plaintiff must not only show a violation but also that the challenged policy is not reasonably related to the prison's legitimate penological interests. <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1216-17 (9th Cir. 2008). Put differently, inmates are entitled to "reasonable accommodations, not to optimal ones finely tuned to [inmates'] preferences." <u>Nunes v. Mass. Dep't of Corr.</u>, 766 F.3d 136, 146 (1st. Cir. 2014).

## 2. Individual Capacity Claims.

As with the ADA Title II, individuals in their individual capacity are not proper defendants of Rehabilitation Act § 504 lawsuits. <u>Brian Cesar Zamora v. County of Los Angeles, et al.</u>, No. 2:15-cv05405-PJW, 2015 U.S. Dist. LEXIS 191759, at *11 (C.D. Cal. Nov. 24, 2015).

### 3. Official Capacity Claims.

A state entity generally waives any Eleventh Amendment immunity to Rehabilitation Act § 504 suits by accepting federal funds. Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 819 (9th Cir. 2001). At the screening stage, it is plausible that CDCR accepts funds in a manner that renders it liable under the Rehabilitation Act. See Clark v. California Dep't of Corr., 123 F.3d 1267, 1271 (9th Cir. 1997) (California waived its Eleventh Amendment immunity by accepting federal funds and the funding statute "manifests a clear intent to condition participation in the programs funded under the [Rehabilitation Act]").

### 4. Lack of Intentional Discrimination.

Plaintiff's allegations do not show that Defendants intentionally discriminated against the disabled by failing to maintain a walkway in A-Yard free of tripping hazards. Plaintiff does not allege that he requested an accommodation that was denied before he fell. When he requested an accommodation (i.e., fixing the walkway) after he fell, Defendants on CIM's Reasonable Accommodation Panel ("RAP"), Defendants Castorena, Nesbitt, Kerr, and Muratet, responded that his request would be considered by decision-makers with knowledge of available funding and CDCR's priorities for construction improvements. (Dkt. 32-2 at 27.) Again, even if Defendants knew about the hole before Plaintiff fell, they would not have known that it was likely to cause harm to a federally protected right.

### D. Bane Act Claims.

The Bane Act provides a right to relief when someone "interferes by threats, intimidation, or coercion … with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1. As the first two elements, a Bane Act plaintiff "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation

14

or coercion." <u>Scalia v. County of Kern</u>, 308 F. Supp. 3d 1064, 1080 (E.D. Cal. 2018) (quoting <u>Allen v. City of Sacramento</u>, 234 Cal. App. 4th 41, 67 (2015)). "Intentional" interference exists if (1) the right at issue clearly delineated and plainly applicable under the circumstances of the case; and (2) the defendant committed the act in question with the "particular purpose of depriving the victim of his enjoyment of the interests protected by that right." <u>Sandoval v. Cty. of Sonoma</u>, 912 F.3d 509, 520 (9th Cir. 2018) (citing <u>Cornell v. City & Cty. of S.F.</u>, 17 Cal. App. 5th 766, 803 (2017)).

If there is no constitutional violation, then the Bane Act claim fails. <u>Pryor v. City & Cty. of S.F.</u>, 672 F. App'x 751, 752 (9th Cir. 2017) (citing <u>King v. State</u>, 242 Cal.App.4th 265, 294 (2015)). Because Plaintiff has not alleged facts showing that the broken walkway violated his constitutional rights, his Bane Act claim fails.

Additionally, Eleventh Amendment immunity applies to state law claims brought into federal court. <u>Pennhurst v. State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>see also</u> <u>C.N. v. Wolf</u>, 410 F. Supp. 2d 894, 900 (C.D. Cal. 2005) (finding that Eleventh Amendment immunity bars claims against CDCR under various California civil rights statutes). Thus, Eleventh Amendment immunity bars Plaintiff's "official capacity" Bane Act claims.[6]

**E. <u>Elder Abuse Act Claims.</u>**

Plaintiff alleges that Defendants engaged in "physical abuse" by "failing to provide a safe path of travel" for him. (Dkt. 32 at 29-30.) He also alleges that Defendants negligently failed to "provide safe dependent care." (<u>Id.</u> at 30.)

**1. Elements.**

To state a cause of action for elder abuse under the Act, the plaintiff must plead facts showing two elements: (1) defendant subjected dependent adult or

---

[6] The Court need not decide whether Plaintiff's "individual capacity" claims satisfy the other elements of a Bane Act claim or are barred by other immunities.

elder[7] to statutorily defined physical abuse, neglect, or financial abuse; and (2) defendant acted with recklessness, malice, oppression, or fraud in the commission of the abuse.  Cal. Welf. & Inst. Code § 15657; Wolk v. Green, 516 F. Supp. 2d 1121, 1133 (N.D. Cal. 2007).

"The Elder Abuse Act does *not* apply to simple or gross negligence …." Worsham v. O'Connor Hosp., 226 Cal. App. 4th 331, 336 (2014).  "Oppression, fraud and malice involve intentional, willful, or conscious wrongdoing of a despicable or injurious nature."  Carter v. Prime Healthcare Paradise Valley LLC, 198 Cal. App. 4th 396, 405 (2011).  "Recklessness involves deliberate disregard of the high degree of probability that an injury will occur and rises to the level of a conscious choice of a course of action … with knowledge of the serious danger to others involved in it."  Id.

The Act defines "physical abuse" by referencing California Penal Code sections that define criminal assault, battery, and sexual battery, as well as "unreasonable physical constraint," "prolonged or continual deprivation of food or water," and "use of a physical or chemical restraint or psychotropic medication" for any purpose not authorized by a doctor.  Cal. Welf. & Inst. Code § 15610.63. The Act defines "neglect," in relevant part, as "the negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise."  Id. § 15610.57(a).  The Act gives examples of neglect including "failure to protect from health and safety hazards."  Id. § 15610.57(b)(3).

_____

[7] An "elder" is a person "65 years of age or older."  Cal. Welf. & Inst. Code § 15610.27.  Plaintiff alleges he was age 65 "at all material times."  (Dkt. 32 at 27.) The Court accepts this allegation as true while noting that CDCR's Inmate Locator website identifies Plaintiff as 64.  See CDCR Inmate Locator, https://perma.cc/D6QW-EJ2N (last visited Jun. 5, 2023).

### 2.  Official Capacity Claims.

Again, Eleventh Amendment immunity applies to state law claims brought into federal court under pendent jurisdiction.  Eleventh Amendment immunity bars Plaintiff's "official capacity" Elder Abuse Act claims against CDCR.  <u>Simmons v. CDCR, et al.</u>, No. 1:10-cv-00553, 2015 U.S. Dist. LEXIS 118634, at *5, 2015 WL 5178923, at *2 (E.D. Cal. Sep. 4, 2015).

### 3.  Pleading Defects.

Plaintiff's walkway-related allegations do not meet the statutory definition of "physical abuse."  They also do not demonstrate that any named Defendant acted with "recklessness, malice, oppression, or fraud."  As discussed above, even if Defendants knew about the sidewalk hole before Plaintiff tripped, no allegations suggest they had a reason to see a "high degree of probability" that it would cause a serious injury as opposed to minor scrapes or bruises.  Even the SAC alleges only negligence.  (Dkt. 32 at 30.)

### F.  <u>Futility of Amendment.</u>

"Unless it is absolutely clear that no amendment can cure the defect, … a <u>pro se</u> litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."  <u>Lucas v. Dep't of Corr.</u>, 66 F.3d 245, 248 (9th Cir. 1995).  Plaintiff here was told that he failed to allege facts showing that the walkway hole posed a sufficiently serious risk of substantial harm, and that all the named Defendants actually knew of and disregarded that risk.  (Dkt. 17 at 3; Dkt. 23 at 3.)  The SAC represents his third pleading attempt and still fails to state a walkway-related claim for the reasons stated above.  Through his amendments, Plaintiff has shown that at worst, this is a claim about CDCR prioritizing other expenditures of its limited resources above repairing this A-Yard walkway.

Where a party has had multiple opportunities to amend and cannot state a viable claim for relief, dismissal without leave to amend is appropriate.  <u>Metzler</u>

1  Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1060 (9th Cir. 2008)

2  (finding dismissal without leave to amend appropriate when a party has "multiple

3  opportunities to amend and [is] unable to cure the defects that required dismissal of

4  [] previous complaints."); see also Miller v. Rykoff-Sexton, Inc., 845 F.2d 209,

5  214 (9th Cir. 1988) ("An amendment would be 'futile' if there is no set of facts can

6  be proved which would constitute a valid claim or defense.").

7        The immunities and pleading defects discussed above cannot be cured by

8  alleging additional facts.  The undersigned therefore recommends the dismissal of

9  all of Plaintiff's Walkway Claims without further leave to amend.

10                                      **IV.**

11            **DISCUSSION: GRIEVANCE MISHANDLING CLAIMS**

12      A. **Plaintiff's Allegations.**

13        After falling and breaking his fingers, Plaintiff submitted a grievance

14  complaining about the walkway hole.  (Dkt. 32-2 at 22 (grievance dated 3/24/21).)

15  The grievance also mentions numerous "ADA violations," including lack of ramps,

16  malfunctioning plumbing, lack of air-conditioning, and lack of porta-potties on the

17  yard.  (Id.)

18        Plaintiff's grievance was directed to CIM's RAP for a response.  (Dkt. 32 at

19  16; Dkt. 32-2 at 27.)  Members of the RAP include Defendants Castorena, Nesbitt,

20  Kerr, and Muratet.  (Dkt. 32-2 at 27.)  The RAP noted that CIM had already

21  responded by moving Plaintiff out of Facility-A away from the broken walkway.

22  (Id.)  The RAP further noted that the major repairs Plaintiff was requesting would

23  be shared with CDCR management for evaluation and planning.  The RAP

24  concluded, "No interim accommodation required."  (Id.)

25        Plaintiff complained that his grievance should have been processed as a

26  grievance through the first level of review rather than interpreted as a request for

27  an accommodation.  (Id. at 30.)  He alleges that Defendant Kerr mischaracterized

28  his grievance to prevent him from exhausting his administrative remedies.  (Dkt.

32 at 13.)  Defendant Kerr then mishandled subsequent grievances about the initial mischaracterization of Plaintiff's March 2021 grievance.  (Id. at 16-19.)

Plaintiff alleges that Defendants' "misconduct includes a violation of Plaintiff's First Amendment right to advance his administrative remedies and be free from retaliation, chilling and other obstructive conduct of defendant T.KERR."[8]  (Dkt. 32 at 24.)  He alleges that Defendant Kerr "knowingly fail[ed] to follow proper grievance procedures as a form of intentionally retaliation. Including wrongly and falsely transforming Plaintiff's March 18, 20 21 grievance into an unsigned and fabricated March 24, 2021 Accommodation Request."  (Id. at 5.)  He alleges that Defendant Kerr's mishandling of his grievance "made Administrative Remedies unavailable and further chilled my ordinary firmness to proceed."  (Id. at 17.)

## B. § 1983 Claim: First Amendment Right to Petition Without Retaliation.

### 1.  Elements.

The First Amendment to the Constitution guarantees "the right of the people…to petition the Government for a redress of grievances." U.S. Const. amend. I.  "The First Amendment applies to state laws and regulations through the Due Process Clause of the Fourteenth Amendment."  National Ass'n for Advancement of Psychoanalysis v. California Bd. Of Psychology, 228 F.3d 1043, 1053 (9th Cir. 2000).

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions…for speaking out."  Hartman v. Moore, 547 U.S. 250, 256 (2006).  Prisoner plaintiffs

---

[8] In prior complaints, Plaintiff attempted to state a § 1983 claim based on Due Process violations arising out of grievance mishandling.  He was advised in prior screening orders that inmates have no due process right to accurate, efficient grievance review.  (Dkt. 17 at 6; Dkt. 23 at 7.)  The SAC does not mention "due process," so the Court does not interpret it as raising a § 1983 due process claim.

must allege the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in conduct protected by the First Amendment; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

## 2.  Pleading Defects.

Plaintiff does not allege that he suffered any adverse consequence as a result of filing a grievance.  Rather, the only allegedly retaliatory act is the mishandling of his grievance by mischaracterizing it as a request for an ADA accomodation.  These allegations satisfy neither the first nor second elements of <u>Rhodes</u>.

To the extent Defendants might raise lack of PLRA exhaustion as a defense, nothing prevents Plaintiff from arguing that Defendant Kerr's actions rendered the grievance process effectively unavailable.  But Defendant Kerr's actions are not separately actionable under § 1983.

## C. <u>The Bane Act.</u>

Having failed to allege facts showing a constitutional violation, Plaintiff's Bane Act claim also fails.

## D. <u>Other Claims.</u>

The Court does not interpret the SAC as attempting to state a claim based on grievance mishandling under the ADA, Rehabilitation Act, or Elder Abuse Act.

## E. <u>Futility of Amendment.</u>

All the pleading defects discussed above cannot be cured by alleging additional facts.  The undersigned therefore recommends the dismissal of Plaintiff's Grievance Mishandling Claims without further leave to amend.

# V.

## DISCUSSION: HEAT AND WATER QUALITY CLAIMS

### A. **Plaintiff's Allegations.**

Plaintiff alleges that there is "no ambient air cooling" at CIM's A-Facility. (Dkt. 32 at 11.)  He describes prolonged exposure to excessive heat, as follows:

> Between May 15, 2021 and September 2021 and for weeks on end
> the outside air temperature exceeded 105° (inside - 95°) the heat
> waves sometimes lasted over three days, and sometimes for over
> three weeks.  As a result of the ongoing excessive heat episodes
> Plaintiff experienced many excessive heat injuries including even
> more blurring vision, sleeplessness, headaches, shortness of breath
> and dizziness.

(Id. at 14-15.)  When he complained to his doctor, the doctor instructed him to "drink more water." (Id. at 15.)  He contends that he cannot drink more water to mitigate the effects of excessive heat, because the water at CIM "burns the skin and prematurely rots the rubber plumbing fixtures."  (Id.)

In the Inspection Letter, Defendant Cain explained the persistent plumbing problems at CIM, as follows:

> [I]n order to comply with public health requirements, CIM's water
> treatment plant must heavily treat the water, which causes rapid
> deterioration of rubber gaskets and leads to copper being stripped out
> of pipes, making them thin and susceptible to leaks.

(Dkt. 32-1 at 25.)

Plaintiff acknowledges that CIM has a "heat plan" and attaches it as Exhibit 2 to the SAC.  (Id. at 11; Dkt. 32-1 at 28.)  The heat plan's Stage Two instructions for when the inside temperature reaches ninety degrees include "encouraging heat-risk inmate patients to take frequent showers, drink iced water, soak themselves with water from dorm sinks, and accepting misting by a fine spray."  (Dkt. 32-2 at

6.)  Plaintiff alleges that this plan is inadequate because CIM's water "burns the skin."  (Dkt. 32 at 22.)

**B. <u>Other Central District Litigation.</u>**

Other CIM inmates have recently litigated over CIM's lack of air-conditioning and heavily treated water.  Two cases filed in the Central District are as follows:

• <u>St. Michael Balzarini v. Ralph Diaz, et al.</u>, No. 5:18-cv-01962-RGK-MAA (C.D. Cal.).  <u>Pro se</u> Plaintiff Balzarini, formerly an inmate at CIM, sued two former wardens, a facility captain, and the former Secretary of CDCR alleging dangerous heat exposure.  <u>Id.</u>, Dkt. 97.  The Court found that while Plaintiff's allegations satisfied the objective prong of a § 1983 Eighth Amendment claim, they did not satisfy the subjective prong.  <u>Id.</u>, Dkt. 97 at 32-33.  The operative complaint failed to allege that the named defendants were responsible for CIM's lack of air-conditioning.  <u>Id.</u>, Dkt. 97 at 33-34.)  Judgement was entered against Plaintiff in February 2022.  <u>Id.</u>, Dkt. 99.

• <u>Harold Taylor v. Dean Borders, et al.</u>, No. 5:18-cv-02488-TJH-AGR (C.D. Cal.).  In this case, several CIM inmates are represented by counsel pursuing a putative class action.  The sole defendant, CDCR, moved for summary judgment, <u>Id.</u> at Dkt. 170, and then withdrew that motion on May 22, 2023, stating an intent to refile, <u>Id.</u> at Dkt. 183.  The declarations filed in support of that motion include a declaration from Defendant L. Kazandjian explaining that he is CIM's Chief Engineer and has worked on CIM's ventilation systems and water treatment plant.  <u>Id.</u>, No. 5:18-cv-02488-TJH-AGR, Dkt. 170-2 at 1-3.  He declares that CIM's water complied with government requirements during the times at issue in this 2018 lawsuit.  He also declares that CIM started construction on an air-conditioning system for Facility-A in April 2023.  <u>Id.</u>

**C. § 1983 Claims: Eighth Amendment/Inhumane Conditions.**

**1. The Objective Prong: Water.**

The Eighth Amendment protects inmates from being required to drink unreasonably dangerous water. See Helling v. McKinney, 509 U.S. 25, 35-37 (1993) (using "demonstrably unsafe drinking water" as a hypothetical example of a potential conditions of confinement claim); Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992) (holding prisoner stated Eighth Amendment claim because, among other things, the prison's "drinking water contain[ed] small black worms which would eventually turn into small black flies"); Robinson v. Page, 170 F.3d 747, 747-49 (7th Cir. 1999) (holding inmate's allegations that prison officials knew of dangerous levels of lead in the drinking water stated Eighth Amendment claim).

Plaintiff alleges that the water at CIM is "heavily treated," such that contact with it causes a burning sensation to the eyes and skin. (Dkt. 32 at 21-22.) This does not sufficiently allege that the water at CIM is an inhumane condition of confinement. Plaintiff's allegations are consistent with heavily chlorinated water which is not unsafe. He does not allege that the water contains chemicals exceeding the amount permitted by law. He does not allege that he experienced any sickness caused by CIM's water. See Lewis v. United States, No. 1:20-cv-00693, 2020 U.S. Dist. LEXIS 192381, at *12, 2020 WL 6118460, at *5 (E.D. Cal. Oct. 16, 2020) (dismissing as too speculative Eighth Amendment claims based on allegations of contaminated prison water where plaintiff "does not allege that he has seen any tests or reports of water contamination. He does not allege that any professional has told him that the water is contaminated. He has not alleged that any inspector has found contamination.").

**2. The Subjective Prong: Water.**

Plaintiff alleges that Defendants must have known CIM's water was "contaminated" because "no officers or staff drink it." (Dkt. 32 at 15.) A preference for bottled water – particularly if the tap water is heavily chlorinated but

23

still meets health and safety guidelines – does not show knowledge of unsafe "contamination." In the Inspection Letter, Defendant Cain attributed the unappealing aspects of CIM's water to the fact that it is heavily treated. (Dkt. 32-1 at 25.) No facts suggest that he or any other Defendant believed that the water was unsafe for drinking or bathing. Indeed, Plaintiff's own doctor encouraged Plaintiff to drink it. (Dkt. 32 at 15.) In sum, Plaintiff has failed to plead facts satisfying the subjective prong for the named Defendants.

### 3. The Objective Prong: Heat.

The Eighth Amendment guarantees an "adequate," but not necessarily "comfortable," temperature in prisons. Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996). "One measure of an inadequate, as opposed to merely uncomfortable, temperature is that it poses 'a substantial risk of serious harm.'" Graves v. Arpaio, 623 F.3d 1043, 1049 (9th Cir. 2010) (quoting Farmer, 511 U.S. at 834). That said, the Eighth Amendment does not require that prison housing units be air-conditioned. For example, in Gates v. Cook, 376 F.3d 323 (5th Cir. 2004), the Fifth Circuit examined a claim of excessive heat by death row inmates in Mississippi. During the summer months, the temperature averaged ninety degrees with high humidity. Id. at 334. At the time, Death Row was not air-conditioned. Id. The Fifth Circuit upheld an injunction requiring prison officials to provide fans, extra showers, and ice water on days where the heat index reached ninety. Id. The prison, however, was not required to install air-conditioning.

Here, while Plaintiff alleges disability due to visual impairment, he does not allege a medical condition that would increase his vulnerability to serious illness caused by excessive heat. Plaintiff acknowledges that CIM has a heat plan that it activates at Stage One when the external temperature reaches ninety degrees and at Stage Two when the internal temperature reaches ninety degrees. (Dkt. 32-2 at 4-6.) Plaintiff does not contend that Defendants failed to activate the heat plan during the 2021 heat wave. Rather, he alleges that the plan does not adequately

24

1  mitigate the ill-effects of excessive heat because using CIM's water to cool off
2  burns the eyes and skin.  (Dkt. 32 at ¶ 24.)

3      **4.  The Subjective Prong: Heat.**

4          Plaintiff fails to plead facts satisfying the subjective prong as to the named
5  Defendants.  Plaintiff does not allege that any Defendant was responsible for
6  drafting CIM's heat plan or failed to implement CIM's heat plan.  Rather, Plaintiff
7  attempts to hold Defendants individually liable for CIM's lack of air-conditioning
8  and reliance on water and ice for cooling during heat emergencies, despite the
9  water being heavily treated.  Plaintiff does not allege facts showing any individual
10 Defendant was responsible for CIM's lack of air-conditioning or the adoption of
11 CIM's heat plan.  Plaintiff does not allege facts showing any individual Defendant
12 knew that excessive heat, despite the heat plan's mitigation measures, posed a
13 serious risk to Plaintiff's health.

14     **5.  Official Capacity Claims.**

15         As discussed in connection with Plaintiff's Walkway Claims, Eleventh
16 Amendment immunity bars all Plaintiff's current § 1983 "official capacity" claims,
17 against CDCR, which seek only money damages and retrospective declaratory
18 relief.  Plaintiff, however, could potentially amend to add a claim for prospective
19 injunctive relief against CDCR, because he alleges that inadequate cooling and
20 heavily treated water are conditions present throughout CIM, not just at A-Yard.
21 Such a claim, however, would still be insufficient without factual allegations
22 showing an Eighth Amendment violation.

23 **D. § 1983 Claims: Equal Protection.**

24         Plaintiff alleges that "the Women prisoners at California Institution for
25 Women received their drinking from CIM's water plant, but they continue receive
26 bottled and uncontaminated drinking and cooling water (Gender Discrimination)."
27 (Dkt. 32 at 28.)

28         This appears to repeat an allegation made in <u>Harold Taylor v. Dean Borders,</u>

1   et al., that due to concern over nitrates in the drinking water, inmates at California

2   Institution for Women ("CIW") are given bottled water.[9]  No. 5:18-cv-02488-TJH-

3   AGR, Dkt. 134 at 7 (Third Amended Complaint), Dkt. 157 (4/15/22 order

4   dismissing equal protection claim without prejudice), Dkt. 166 (11/22/22 order

5   denying leave to file Fourth Amended Complaint).

6          **1. Elements.**

7          "The Equal Protection Clause of the Fourteenth Amendment commands that

8   no State shall deny to any person within its jurisdiction the equal protection of the

9   laws, which is essentially a direction that all persons similarly situated should be

10  treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

11         To state a claim under 42 U.S.C. § 1983 for a violation of the Equal

12         Protection Clause of the Fourteenth Amendment a plaintiff must show

13         that the defendants acted with an intent or purpose to discriminate

14         against the plaintiff based upon membership in a protected class.

15  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

16         **2. Intentional Discrimination.**

17         Plaintiff fails to plead facts showing that Defendants had any role in

18  distributing bottled water at the women's prison or withholding available bottled

19  water from the men's prison during heat emergencies.  To the extent CDCR has a

20  policy of providing bottled water to CIW inmates but not CIM inmates, Plaintiff

21  has not alleged facts showing that any individual Defendant was responsible for

22  this policy or intentionally discriminated against male inmates by following it.

23

24         [9] According to the National Institutes of Health, maternal exposure to

25  nitrates in drinking water can cause "possible adverse reproductive and
    developmental effects."  See Manassaram DM, Backer LC, Moll DM. A review of

26  nitrates in drinking water: maternal exposure and adverse reproductive and

27  developmental outcomes. Environ Health Perspect. 2006 Mar;114(3):320-7. doi:
    10.1289/ehp.8407. PMID: 16507452; PMCID: PMC1392223.

28

### 3. Official Capacity Claims.

Again, Eleventh Amendment immunity bars all Plaintiff's § 1983 official capacity claims against CDCR for monetary damages and retrospective declaratory relief.

### E. ADA and Rehabilitation Act Claims.

As discussed in connection with Plaintiff's Walkway Claims, the only proper defendant for an ADA Title II claim or § 504 Rehabilitation Act claim is CDCR. Plaintiff cannot pursue a claim for monetary damages against CDCR, due to the failure to allege facts showing intentional discrimination based on disability. The conditions Plaintiff describes, including the heavily treated water and inadequate heat plan, would apply to all CIM inmates, not just disabled CIM inmates.

### F. Bane Act Claim.

Plaintiff's official capacity claims are barred by Eleventh Amendment immunity. Plaintiff's individual capacity claims fail because Plaintiff has not alleged facts that show a constitutional violation. Plaintiff has not alleged facts showing that the individual Defendants engaged in "threats, intimidation, or coercion" to the extent they had a role in operating CIM's water system or implementing its heat plan.

### G. Elder Abuse Claim.

Plaintiff's official capacity claims are barred by Eleventh Amendment immunity. Plaintiff's individual capacity claims fail because Plaintiff has not alleged facts showing that the individual Defendants acted "with recklessness, malice, oppression, or fraud" to the extent they had a role in operating CIM's water system or implementing its heat plan.

### VI.

### CONCLUSION

IT IS THEREFORE RECOMMENDED that the District Court issue an

Order: (1) approving and accepting this R&R;

(2) dismissing WITH PREJUDICE all Walkway Claims;

(3) dismissing WITH PREJUDICE all Grievance Handling Claims;

(4) dismissing WITH PREJUDICE the following Heat and Water Quality Claims:

(a) all claims against Defendant Kerr;

(b) all claims for retrospective declaratory relief;

(c) all ADA Title II claims against Defendants in their individual capacity;

(d) all § 504 Rehabilitation Act claims against Defendants in their individual capacity;

(e) ADA Title II claims against Defendants in their official capacity for monetary damages and;

(f) § 504 Rehabilitation Act claims against Defendants in their official capacity for monetary damages;

(g) all Elder Abuse Act claims; and

(h) all Bane Act claims;

(5) dismissing all remaining Heat and Water Quality Claims WITHOUT PREJUDICE and WITH LEAVE TO AMEND.  And limit the Third Amended Complaint to Heat and Water Quality Claims against CDCR for injunctive relief under (1) § 1983 (based on either the Eighth Amendment and/or Equal Protection Clause); (2) the ADA Title II; and/or (3) the Rehabilitation Act § 504.

DATED:  June 7, 2023

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE